124 So.2d 65

**WATERMAN STEAMSHIP CORPORATION**

v.

**STATE of Alabama.**

**1 Div. 873.**

Supreme Court of Alabama.

Sept. 8, 1960.

Rehearing Denied Nov. 17, 1960.

Armbrecht, Jackson, McConnell & De-Mouy, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., Guy Sparks, Special Asst. Atty. Gen., and Jas. R. Payne, Asst. Atty. Gen., for appellee.

SIMPSON, Justice.

This appeal is from a final decree of the Circuit Court of Mobile County, in Equity, denying appellant the relief prayed for in its bill of complaint and giving recovery to appellee in the amount of the final assessment made by the Department of Revenue against appellant. The bill was filed as a statutory appeal from a deficiency levied by the Department of Revenue of the State of Alabama for taxes allegedly due the State under the sales tax statute of this State. The State Department of Revenue levied the assessment on purchases of certain supplies (pig iron bars) which the appellant claims to be exempt by statute from such tax.

Most of the facts were stipulated by the parties, and but one witness was called. Upon the statement of facts as stipulated and after hearing testimony of this one witness, the Court entered decree for the State. Factually the situation is this:

Waterman Steamship Corporation is an Alabama corporation engaged in the steamship business and the carriage of goods by sea. It has a license from the State of Alabama in accordance with the statute and the rules and regulations issued thereunder to purchase tangible personal property within the State of Alabama without the payment to the vendor of the sales tax, providing it reports and pays such taxes as may be due directly to the State Department of Revenue.

During the period July 1, 1957 to July 30, 1957, and September 1, 1957 to September 30, 1957, appellant made purchases at retail of tangible personal property, including ballast material, on which returns for sales tax were not reported or made. The ballast material so purchased was placed on certain vessels for use aboard them while plying the high seas in intercoastal trade between the Ports of Mobile, Alabama, New York, New York, Newark, New Jersey, Houston, Texas, Miami and Tampa, Florida, and New Orleans, Louisiana.

The State Department of Revenue sought to levy an assessment against appellant for sales taxes due on the purchases of this ballast material and a hearing was set and held as to why that assessment should not be made final. An order of final assessment in the total sum of $2,249.20 was entered and notice thereof sent appellant. Thereafter, appellant filed notice of appeal as required by law, giving supersedeas bond as required and the present decree appealed from resulted from the bill of complaint filed in the Circuit Court of Mobile County in Equity.

The ballast material was purchased by Waterman for placement aboard certain of its vessels by a contractor who had a contract to convert certain C–2 cargo vessels to so-called containerships. This type of vessel, instead of carrying cargo in bulk in its holds, as is normally done in C–2 type vessels, was equipped to transport containers of a size, shape and capacity similar to normal highway trailer bodies stacked one on the other within the hold and on the deck of the vessel. The purpose of placing ballasts within the hold in this manner was to insure the proper stability and trim of the vessel.

This ballast, known as solid ballast, consists of bars of pig iron approximately $1\frac{1}{2}$ feet in length by $4\frac{1}{2}$ inches in width and $2\frac{1}{4}$ inches thick, weighing approximately 30 pounds each, which are stowed in areas adjacent to the hull and the shaft alleys of the ship. The pig iron ballast is stowed in these areas within retainer plates welded to the vessel. Pig iron was used in order to get maximum weight within the mini-

mum space and are so stowed to minimize the loss of cargo carrying space in the hold of the vessel. The ballasts become a permanent part of the ship.

The case involves a construction of § 755, Title 51, Code of Alabama of 1940, which insofar as pertinent here reads:

"There are however exempted from the provisions of this article and from the computation of the amount of the tax levied, assessed or payable under this article the following: * * * (r) The gross proceeds from the sale or sales of fuel and *supplies* for use or consumption aboard ships plying on the high seas either in intercoastal trade between ports in the State of Alabama and ports in other states of the United States or its possessions or in foreign * * * countries. Provided, however, that nothing in this article shall be construed to exempt or exclude from the measure of the tax herein levied the gross proceeds of sale or sales of *material and supplies* to any person for use in fulfilling a contract for the painting, repair or reconditioning of vessels, barges, ships and other water craft. * * *" (Emphasis supplied.)

The only question for our determination is whether the items involved and used for ballasts are "supplies" within the meaning of the statutory exclusion.

■ The word "supplies" as used in this statute we think clearly contemplates those items to be used or consumed aboard ship plying on the high seas. Indeed, these are the precise words of the statute. Vol. 40, Words and Phrases, p. 795, defines the word when used in the maritime field in the following manner:

"The word 'supplies,' as applied to a vessel, means those articles which a boat may find to be necessary for con-

sumption and use on a voyage. Gibbons v. The C. J. Caffrey, 40 Mo. 257, 259."

And on page 796:

" * * * In its ordinary acceptation 'supplies' are understood to mean those articles which a boat may find it necessary to purchase for consumption and use on the voyage. * * * Gibbons v. The Fanny Barker, 40 Mo. 253, 254; Bryan v. The Pride of the West, 12 Mo. 371, 374."

■ The pig iron purchased here as the record discloses was a one-time purchase. It was used for the conversion of the ships from C–2 cargo vessels to containerships. It was a permanent installation. We think it clear that it is not this type of purchase which the legislature meant to exclude from the provisions of the sales tax.

■ The substance of the final decree was to the effect that the appellant had failed to show its entitlement to and bring itself fully within the provisions of the exemption section of Title 51, § 755, Code of Alabama of 1940. While it is conceded that his findings are not entitled to the usual presumption where there is no conflicting testimony (since here there was only one witness and a stipulation of facts), there is a presumption that the final assessment entered by the Department of Revenue is correct and we are in accord with the learned trial judge that the taxpayer has not overcome it. State v. Mobile Stove & Pulley Manufacturing Co., 255 Ala. 617, 52 So.2d 693.

It follows then that the decree appealed from is

Affirmed.

LIVINGSTON, C. J., and STAKELY and COLEMAN, JJ., concur.