UNITED STATES of America for the Use and Benefit of OTIS ELEVATOR COMPANY, Plaintiff,

v.

PIRACCI CONSTRUCTION COMPANY, INC., and the Aetna Casualty & Surety Company, Defendants.

Civ. A. No. 75–417.

United States District Court, District of Columbia.

Dec. 9, 1975.

David V. Anthony, Pettit, Evers & Martin, Washington, D. C., for plaintiff.

Harold F. Blasky, Laurence Schor, Max E. Greenberg, Trayman, Harris, Cantor, Reiss & Blasky, Washington, D. C., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Use plaintiff Otis, a subcontractor involved in the construction of the Hirshorn Museum and Sculpture Garden in Washington, D.C., is suing the project's prime contractor, Piracci, for breach of contract and Piracci's surety, Aetna, for increased expenses resulting from delays in the completion of the project. The cause of action against Aetna is based on the Miller Act, 40 U.S.C. §§ 270a–270d. Now before the Court are cross-motions for partial summary judgment on the question of the surety's liability under the Miller Act for increased costs of performance resulting from delay. There being no material facts in issue, it is the opinion of the court that plaintiff is entitled to partial summary judgment.

The contract entered into by Otis and Piracci obligated Otis to perform its duties during a specific time period, provided that Piracci had adequately prepared the work site. Piracci was unable to prepare the site according to schedule due to a dispute with the General Services Administration. Administrative proceedings subsequently established that GSA was at fault, and, for purposes of these motions, it is agreed that Otis in no way contributed to the delay.

Otis alleges that during the period of delay, which extended over 19 months, costs for labor and material increased and material already purchased was placed in storage. Thus, although Otis has received the full contract price, it feels entitled to additional compensation for the costs resulting from the delay. The total recovery sought is $14,330.91. This sum includes increased costs for labor and material, storage charges, indirect administrative costs[1] and a reasonable profit.[2] Since Otis claims this amount in addition to the full contract price, it also seeks to preserve the profit, if any, it would have made on the job, but for the delay.

The principal legal issue presented by these motions is whether a surety under the Miller Act remains liable for the out of pocket expenses of a subcontractor who received payment of the original contract price, but who incurred additional expenses resulting from delays caused by a third party. The identical issue was recently decided by Judge Gerhard Gesell in *United States for the Use of Mariana v. Piracci Const. Co.*, 405 F.Supp. 904 (D.D.C. Order of September 12, 1975). *Mariana* involved another subcontractor on the Hirshorn project, whose legal position was precisely the same as that of the use plaintiff in the instant case. Judge Gesell held Aetna, the surety, liable for increased expenses incurred by Mariana because of the delay in the project's completion.

■ Holding a Miller Act surety liable for all of a subcontractor's out of pocket expenses appears sound. The result is consistent with the language of the Act, which provides, "Every person who has furnished labor or material in the prosecution of the work provided for in [a contract covered by this Act], in respect of which a payment bond is furnished . . . and who has not been paid in full therefor . . . shall have the

right to sue on such bond for the amount . . . ." 40 U.S.C. § 270b (1970). Further, such recovery promotes the underlying purpose of the Act, which is to substitute a surety for the mechanic's lien available to protect subcontractors in non-government construction projects. *See F. D. Rich Co. .v. United States for Use of Industrial Lumber Co., Inc.*, 417 U.S. 116, 121–22, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). There is also a strong public interest in the prompt completion of public construction projects.

■ The key to recovery under the Miller Act is not the theory upon which liability is predicated, but the actual investment by a subcontractor of time and materials in a federal project. *See United States for Use and Benefit of Moran Towing Corp. v. Hartford Accident & Indemnity Co.*, 204 F.Supp. 353, 356 (D.R.I. 1962). As stated by the court in *Mariana*,

> [T]he proper test under the Miller Act is whether the claim for relief is based on actual expenditures for labor or materials utilized in the performance of the subcontract. . . . Use plaintiff's cause of action is not defeated by such technical exercises as analyzing whether the claim arose within or without the contract or by determining if the added costs were indispensable to satisfactory contractual performance.

405 F.Supp. at 907.

■ While the particular theory of liability advanced is not significant, the subcontractor must nevertheless establish liability on the part of the prime contractor. In the instant case, as in *Mariana*, the subcontract does not absolve Piracci from liability for delay damages, and the prime contract, a standard government form, does not shelter the United States. The ultimate liability of Piracci and the United States distin-

---

1. Otis arrived at a figure representing indirect costs by taking 10% of the sum of its direct additional costs. At trial, the court would expect Otis to establish a factual basis for this computation.

2. Otis arrived at a figure representing a reasonable profit by taking 10% of the sum of its direct and indirect additional costs.

guishes the instant case and *Mariana* from several cases cited by Aetna for the proposition that delay damages are not. recoverable against sureties under the Miller Act. *See, e. g., McDaniel v. Ashton-Mardian Co.,* 357 F.2d 511 (9th Cir. 1966); *L. P. Friestedt Co. v. U. S. Fireproofing Co.,* 125 F.2d 1010 (10th Cir. 1942). *McDaniel* and *L. P. Friestedt* both involved standard government contracts which had been construed to prevent recovery against the United States for increased costs due to delays in construction, even though such delays were not the fault of the contractor. *See United States v. Rice,* 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942). According to the usual practice, the subcontracts in each instance tracked the provisions of the prime contracts. When subcontractors brought suit for increased expenses due to delays caused by the government, the courts in both cases, reasoning that the delays did not constitute breach of the prime contract or the subcontract and that, consequently, there was no liability for the increased costs, refused to hold the surety liable. Both the case at bar and *Mariana,* however, involve a revised standard government contract which provides for liability for increased costs due to delay. Thus, the inequitable result feared by the courts in *McDaniel* and *L. P. Friestedt* cannot occur in this case, or any case involving the revised standard contract.

Aetna also relies on *Arthur N. Olive Co. v. United States for Use and Benefit of Marino,* 297 F.2d 70 (1st Cir. 1961) and *United States ex rel. Watsabaugh & Co. v. Seaboard Surety Co.,* 26 F.Supp. 681 (D.Mont.1938), *aff'd,* 106 F.2d 355 (9th Cir. 1939). A close examination of these cases, however, reveals that while they contain some broad language concerning liability for breach of contract damages under the Miller Act, they deal with attempts to recover unrealized gain or profit on work not performed because of a third-party's breach. Thus, the subcontractors in *Olive* and *Watsabaugh* had not actually provided material or labor to the project and were not entitled to protection in the nature of a lien.[3]

While the court holds that Otis can obtain a judgment against Aetna for increased costs of performance, it finds that Otis may not include a reasonable profit in its claim.[4] Otis' profit is not an actual out of pocket expenditure and thus it falls outside both the letter and the spirit of the Act. Piracci may be liable to Otis directly for this sum, but lost profit is precisely the type of breach of contract damage courts have consistently held to fall outside the scope of the Miller Act. *See Arthur N. Olive Co. v. United States for Use and Benefit of Marino, supra.*

In light of the above, the court finds Aetna liable for those increased out of pocket expenses Otis can prove were caused by delay in the project's completion. An appropriate Order accompanies this Memorandum Opinion.

**3.** Counsel for Aetna has recently called to the court's attention *United States for the Use of E & R Construction Co., Inc. v. Guy H. James Construction Co.,* 390 F.Supp. 1193 (M.D.Tenn. 1972), *aff'd without published opinion,* 489 F.2d 756 (6th Cir. 1974). The court finds the holding of *E & R Construction* ambiguous, at best. To the extent a difference of opinion may exist, the court chooses to follow *Mariana.*

**4.** Use plaintiff in *Mariana* did not seek to recover a reasonable profit on its increased expenditures.