# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3913

_____

Consolidated Electrical & Mechanicals, &ast;
Inc., United States of America for the &ast;
Use and Benefit of a Corporation, &ast;
&ast;
&ast;
Appellee, &ast;
&ast;
v. &ast;
&ast;
Biggs General Contracting, Inc., a &ast;
Corporation; Firemen's Insurance &ast;
Company of Newark, New Jersey, &ast;
a Corporation, &ast;
&ast;
Appellants. &ast;

_____

No. 97-4048

_____

Consolidated Electrical & Mechanicals, &ast;
Inc., United States of America for the &ast;
Use and Benefit of a Corporation, &ast;
&ast;
Appellant, &ast;
&ast;
v. &ast;
&ast;
Biggs General Contracting, Inc., a &ast;
Corporation; Firemen's Insurance &ast;

Appeals from the United States
District Court for the
Eastern District of Missouri.

Company of Newark, New Jersey,  *
a Corporation,      *
            *
    Appellees.    *

_____

Submitted:  December 18, 1998

Filed:   February 1, 1999

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Consolidated Electrical & Mechanicals, Inc. (Consolidated) is a use-plaintiff in this action against Biggs General Contracting, Inc. and Fireman's Insurance Company of Newark (Defendants) under the Miller Act, 40 U.S.C. §§ 270a-270d.  After a bench trial, the district court[1] found Defendants liable under the Act, but held that Consolidated was not entitled to damages for lost profits.  Both sides appeal.  We affirm.

## I.

In 1992, Biggs entered into a general contract with the federal government to construct and remodel Missouri Air National Guard buildings at the St. Louis International Airport.  Biggs awarded Consolidated the subcontract for installing electrical fixtures and equipment.  Pursuant to the Miller Act, Biggs obtained a payment bond for the project from Fireman's.

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

The project was plagued by delays, primarily caused by the discovery of asbestos, bad weather, power supply outages, and structural demolition problems. Despite numerous requests from Consolidated, Biggs failed to promptly issue revised construction schedules. This caused significant financial injury to Consolidated in the form of increased storage and material costs. Biggs also failed to provide adequate access to the work site, which resulted in idle time and labor inefficiencies for Consolidated. Because Consolidated was not responsible for the delays, it requested additional payment from Biggs for its increased costs. Biggs refused, pending resolution of its request for additional payment from the government. Consolidated then brought this action for payment.

The district court found that Biggs was partially at fault for the delay damages. Accordingly, it held Defendants liable for $71,540 in damages under the Act. The court denied Consolidated's claim for an additional ten percent in lost profits.

## II.

We review the district court's factual findings for clear error. See Handeen v. LeMaire (In re LeMaire), 898 F.2d 1346, 1349-50 (8th Cir. 1990) (en banc) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-75 (1985)). A finding is clearly erroneous if "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Anderson, 470 U.S. at 573 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). We review the district court's legal conclusions de novo. See Nodaway Valley Bank v. Continental Cas. Co., 916 F.2d 1362, 1364-66 (8th Cir. 1990) (discussing the distinction between questions of law and questions of fact); United States ex rel. Morris Constr., Inc. v. Aetna Cas. Ins. Co., 908 F.2d 375, 377-78 (8th Cir. 1990) (holding that a determination of eligibility for relief under the Miller Act was a mixed question of law and fact, and thus subject to de novo review).

## A.

Defendants argue that the district court clearly erred in finding Biggs partially at fault for Consolidated's damages. We disagree. Although the government initially caused the asbestos-removal delays, Biggs exacerbated the delays and increased Consolidated's damages in several ways. After learning of the delays, Biggs failed to provide Consolidated revised construction schedules, despite numerous requests. Biggs also failed to conduct on-site progress meetings, coordinate the work of its subcontractors, and provide Consolidated with electricity and proper access to the work site. This resulted in well-documented economic injury to Consolidated in the form of increased costs of materials and labor.

Defendants also argue that the district court erred as a matter of law in holding them liable for all of Consolidated's damages after acknowledging that Biggs was only partially at fault. This question is one of first impression in this Circuit.

Because subcontractors may not impose a lien on government-owned property, the Miller Act ensures that they can recover for materials and labor contributed to public projects. See F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417U.S. 116, 121-22 (1974) (citing 40 U.S.C. §§ 270a, 270b); Department of the Army v. Blue Fox, Inc., No. 97-1642, 1999 WL 17684 (U.S. Jan. 20, 1999); United States ex rel. Olson v. W.H. Cates Constr. Co., 972 F.2d 987, 989-90 (8th Cir. 1992). The Act is to be construed broadly because of its remedial nature. See Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102, 107 (1944); Olson, 972 F.2d at 990. Several circuits have interpreted the Miller Act to allow full recovery by a subcontractor when the general contractor is not wholly at fault for the delays. See Mai Steel Serv., Inc. v. Blake Constr. Co., 981 F.2d 414, 418-20 (9th Cir. 1992) (holding a general contractor liable for all of a subcontractor's damages, even though the delays were caused entirely by a third party); United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mut. Fire Ins. Co., 942 F.2d 946, 950-51 (5th

Cir. 1991) (holding a general contractor liable for all of a subcontractor's damages when delays were partially caused by government's discovery of asbestos); United States ex rel. Pertun Constr. Co. v. Harvesters Group, Inc., 918 F.2d 915, 917-19 (11th Cir. 1990) (holding a general contractor liable for all of a subcontractor's damages when delays were partially caused by government's discovery of toxic wastes).

We agree with the reasoning of these circuits. The Miller Act favors allowing full recovery from a general contractor regardless of fault because general contractors have privity of contract with the government and can thus recover delay damages directly from the government, while subcontractors cannot. (Indeed, Biggs brought suit against the government for delay damages in this case.) This is one of the reasons Congress believed that subcontractors had inadequate protection under state law for their work on public projects. See Millers Mutual, 942 F.2d at 951; Pertun, 918 F.2d at 918. Accordingly, the district court properly found against Defendants on the issue of liability.[2]

**B.**

Consolidated cross-appeals on the issue of lost profits. It contends that it may recover lost profits because the district court found that Biggs breached the contract. In the alternative, Consolidated claims that it may recover lost profits because they fall within the scope of relief contemplated by the Miller Act.

A surety's liability under the Miller Act is measured by the general contractor's liability under the construction contract. See D&L Constr. Co. v. Triangle Elec. Supply Co., 332 F.2d 1009, 1013 (8th Cir. 1964); W.F. Magann Corp. v. Diamond Mfg. Co.,

---

[2]We note that a subcontractor may be barred from recovering delay damages when its own conduct was the primary cause of the delay. See Mai, 981 F.2d at 419 n.8; Millers Mutual, 942 F.2d at 952 n.14. It is undisputed here, however, that Consolidated was without fault.

775 F.2d 1202, 1204 (4th Cir. 1985); <u>United States ex rel. Leno v. Summit Constr. Co.</u>, 892 F.2d 788, 791-92 (9th Cir. 1989). Claims brought under the Miller Act, however, are federal causes of action and are separate and distinct from state law breach of contract actions. <u>See</u> <u>United States ex rel. Mariana v. Piracci Constr. Co.</u>, 405 F. Supp. 904, 906 (D.D.C. 1975) (holding that "the Miller Act provides a federal cause of action, and the scope and substance of recovery are governed by federal rather than state law"); <u>United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.</u>, 935 F.2d 936, 940-42 (8th Cir. 1991) (allowing subcontractor to recover full extent of contractual damages because it pleaded a pendent state law claim in addition to its claim under the Miller Act). Therefore, a subcontractor must specifically plead a breach of contract claim under state law in addition to raising a Miller Act claim if it wishes to recover damages under a contract theory. <u>See</u>, <u>e.g.</u>, <u>Leno</u>, 892 F.2d at 791 (finding that subcontractor could not recover state law damages because it failed to specifically plead a state law cause of action in addition to its Miller Act claim).

Consolidated brought this claim "under the Miller Act." Trial Tr. at 7; Appellee's Br. at 15. The district court addressed only a claim under the Miller Act. <u>See</u> Mem. Op. of Sept. 26, 1997, at 12-16. Accordingly, we conclude that Consolidated did not raise a free-standing state law claim against Biggs for breach of contract. Thus, Consolidated's argument for lost profits pursuant to a breach of contract claim against Biggs must fail.

Consolidated also argues that it may recover lost profits pursuant to its Miller Act claim. For this proposition, it cites <u>Hensel Phelps Construction v. United States</u>, 413 F.2d 701, 704 (10th Cir. 1969), and <u>United States v. Transamerica Insurance</u>, 881 F. Supp. 1505, 1509 (D. Kan. 1995), which hold that lost profits are within the scope of the Miller Act. Decisions of the Fifth, Ninth, and Eleventh Circuits, however, hold that the Miller Act does not contemplate lost profits. <u>See</u> <u>Millers Mutual</u>, 942 F.2d at 952-53; <u>Mai</u>, 981 F.2d at 418; <u>Pertun</u>, 918 F.2d at 919. <u>Accord</u> <u>United States ex rel. Otis Elevator Co. v. Piracci Constr. Co.</u>, 405 F. Supp. 908, 910 (D.D.C. 1975) (holding

that "lost profit is precisely the type of breach of contract damage courts have consistently held to fall outside the scope of the Miller Act").

We agree with the reasoning of these latter cases. The Miller Act was not meant to replace subcontractors' state law contract remedies, which allow for recovery of lost profits. Rather, it provides subcontractors an additional remedy to recover costs expended in furnishing "labor or material in the prosecution of the work provided for in [a public construction] contract." 40 U.S.C. § 270b(a). "A claim for profit does not involve actual outlay and thus 'falls outside both the letter and the spirit of the [Miller] Act.'" Millers Mutual, 942 F.2d at 953 (quoting Otis Elevator, 405 F. Supp. at 910). Therefore, delay damages should be limited to out-of-pocket expenditures. See Otis Elevator, 405 F. Supp. at 910.

As noted above, nothing in the Miller Act prevents subcontractors from bringing state law breach of contract claims against general contractors to recover lost profits. Because lost profits are not out-of-pocket expenditures for labor and materials, however, they are not within the scope of remedies provided under the Miller Act. Accordingly, the district court was correct in denying Consolidated's claim for lost profits on this basis.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-