256 So.2d 230 (1972)
TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation, Appellant,
v.
HOUSING AUTHORITY OF the CITY OF MIAMI et al., Appellees.
Nos. 70-1242, 71-170 and 71-171.
District Court of Appeal of Florida, Third District.
January 4, 1972.
Rehearing Denied January 26, 1972.
*231 Carey, Dwyer, Austin, Cole & Selwood, Miami, for appellant.
Welsh & Carroll and Horton, Schwartz & Perse, Miami, for appellees.
Before PEARSON, HENDRY and BARKDULL, JJ.
HENDRY, Judge.
Appellants have sought review of the final judgment on the merits entered pursuant to a jury verdict and two post-final judgment orders taxing costs and awarding attorney fees in an action on a construction bond for a public project. These appeals will be treated as consolidated in this opinion.
On January 20, 1966, the Housing Authority of the City of Miami (nominal appellant-nominal plaintiff) made a written public construction contract with appellant Benedict & Jordan, Inc. as prime contractor for a low rent housing project. The contract required a payment and performance *232 bond. On January 20, 1966, Benedict & Jordan as principal and appellant-defendant, Travelers Indemnity Company as surety, signed a "payment and performance bond" naming the Housing Authority and "all persons doing work or ... furnishing ... materials" under the contract as obligees. The bond also provided, in part, that:
"NOW THEREFORE, the conditions of this obligation are such that if the Principal shall in all respects fully comply with the terms and conditions of said contract * * * and shall indemnify and save harmless the Housing Authority as the City of Miami, Florida, against or from all costs, expenses, damages injury or loss, to which the Housing Authority of the City of Miami, Florida, may be subjected by reason of wrongdoing, misconduct, want of care, or skill, negligence or default, including patent infringement on the part of the Contractor, its agents or employees, in the execution of performance of said Contract, and shall promptly pay all just claims for all work done, or skill, tools, or machinery, supplies, labor and materials furnished and debts incurred by the contractor in or about the performance of the work contracted for, this obligation shall be void."
Under a written contract of February, 1966, Wall Plastering Company became a sub-contractor of Benedict & Jordan for the project.
The project was not finished until 230 days after the agreed date for completion because of several factors; among them were disputes between Wall Plastering and Benedict & Jordan.
In February, 1967, Wall Plastering commenced action against Benedict & Jordan and Travelers Indemnity Company. The complaint, as amended, was framed in three counts, each seeking specifically identifiable items of damages. Count I sought recovery of $47,000 alleged to be due and owing Wall under the terms of the original subcontract. Count II sought $75,000 as damages for delay and negligent or intentional interference with Wall's performance of the contract. Count III sought damages in excess of $5,000 for extras.
Benedict & Jordan answered by a general denial. A counterclaim was also filed against Wall claiming damages in the amount of $126,941.69.
Travelers answered and generally denied the material allegations of the complaint. It also presented affirmative defenses to Count II, denying that relief demanded was within the scope of § 255.05, Fla. Stat. 1965, F.S.A., and denying that the claims were within the coverage of the payment and performance bond. Travelers also moved to strike Count II because the claims alleged were not within the purview of the payment and performance bond. The court reserved ruling on the motion to strike.
On March 26, 1970, a transcribed pretrial conference was held out of the presence of the judge. At the conference Travelers Indemnity reserved its rights under its affirmative defenses and motion to strike, which motion was then under consideration.
Then, on March 30, 1970, the trial date, Travelers Indemnity in open court advised that by agreement of counsel (which agreement is not in the record) that: (1) it would not actively participate in the trial; (2) that the court need not name Travelers Indemnity in the call of the case or in the verdict form, because if a verdict were rendered in favor of Wall Plastering against Benedict & Jordan, the trial court would rule, as a matter of law, which items in the verdict were chargeable against Travelers Indemnity, and (3) judgment could be entered on the bonded claims. Travelers Indemnity views the stipulation as an attempt to simplify the issues for the jury.
The jury found for Wall Plastering on all claims, and, inter alia, a judgment was entered against Benedict & Jordan and against Travelers for the full amount of the jury verdict as to Count II. The court entered an order denying post-trial motions, *233 including Travelers' earlier motion to strike Count II of the complaint.
Travelers Indemnity Company seeks review of only that part of the final judgment amounting to $60,000 which was entered as damages on Count II of the multicount complaint filed by Wall Plastering.
Travelers Indemnity has presented three points for reversal and has argued them together: (1) the court erred in denying Travelers' motion to strike, as against Travelers, all Count II claims for damages and in rendering judgment against Travelers in this regard; (2) a sub-contractor-obligee on a § 255.05 Fla. Stat., F.S.A., public building construction contract bond, or similar bond, cannot maintain an action against the surety on the bond for claims based on negligence, breach of contract, delay, loss of profit, or intentional wrongdoing on the part of the prime contractor-principal; (3) on its face, Travelers' bond is not conditioned to pay claims based on negligence, breach of contract, delay, loss of profit, or intentional wrongdoing on the part of the prime contractor-principal. On the other hand, appellee Wall Plastering contends: (1) Travelers Indemnity is precluded from challenging the judgment appealed because it so stipulated at trial, under the rules concerning invited error, estoppel, and stipulation; (2) the bond sued upon does provide for liability of the surety to the subcontractor for damages for delay, because the provisions of the bond go beyond the requirements of § 255.05 and beyond the usual performance and payment bond under § 627.0905, Fla. Stat., F.S.A. by providing, inter alia, to pay for "all just claims and damages," and (3) a bond under § 255.05 does provide for liability of the surety.
To begin with, under the facts of this case, we express the view that the bond in question is a payment and performance bond containing provisions more extensive than the requirements under § 255.05, Fla. Stat. 1965, F.S.A. In 1966, § 255.05, Fla. Stat. 1965, F.S.A., read as follows:
"255.05 Bond of contractor constructing public buildings; suit by materialmen, etc.

(1) Any person entering into a formal contract with... [any] public authority, for the construction of any public building ... or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; and any person, making application therefor, and furnishing affidavit to ... the ... public authority, having charge of said work, that labor, material or supplies for the prosecution of such work has been supplied by him, and payment for which has not been made, ... said person, supplying such labor, material or supplies shall have a right of action, and may bring suit in the name of the state ... or political subdivision, prosecuting said work, for his use and benefit, against said contractor, and sureties, and to prosecute the same to final judgment and execution; * * *"
The statute has since been revised, but § 255.05, Fla. Stat. 1969, F.S.A. continues to require:
"... the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying him labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; * * *"
Cf. § 627.0905, Fla. Stat. 1965, § 627.0905, Fla. Stat. 1969, F.S.A.
Parties in executing a bond may contract for provisions broader than the *234 minimal requirements of the statute. A surety company is bound by any terms of its bond which extend beyond the statutory requirements. See: Phoenix Indemnity Co. v. Board of Public Instruction, Fla.App. 1959, 114 So.2d 478. Florida has viewed construction bonds as contracts of insurance, and therefore in constructing the terms of these contracts, they must be read and interpreted strictly against the bonding company which prepared them. Id., Development Corporation of America v. United Bonding Insurance Company, 413 F.2d 823, 826 (5th Cir.1969), and National Union Fire Insurance Company of Pittsburg, Pennsylvania v. Robuck, Fla.App. 1967, 203 So.2d 204.
The terms of the bond here are sufficiently broad, when construed strictly against the drafter of the contract, to extend coverage under the bond to the damages for delay claimed by the subcontractor. The bond provides for coverage for ". . all costs, expenses, damages, injury or loss, to which the Housing Authority of the City of Miami, Florida may be subjected by reason of wrongdoing, misconduct, want of care or skill, negligence or skill, negligence or skill, negligence or default... ." The principal and surety were to "... assure and protect all laborers and furnishers of materials on said work ... and shall promptly pay all just claims for damages or injury to property and for all work done, or ... labor and materials furnished and debts incurred by the contractor in and about the performance of the work contracted for ..."
We view the allegation in the complaint concerning § 255.05, Fla. Stat. 1965, F.S.A., as indicating that a bond was posted as required by the statute and not that the bond posted met only those minimum requirements. Thus appellee does not present arguments concerning the scope of the bond's coverage for the first time on appeal, as appellant has contended.
Next, we consider the stipulation which was to the effect that the court could enter a judgment against Travelers if a judgment was entered against the prime contractor. In Phillips v. Acacia Mut. Life Ins. Co., 124 Fla. 179, 168 So. 34, 35, the court explained:
"The rule is general and is approved by this court, that any defenses in behalf of either party are waived by stipulation and consent for final decree. If the defendant assents to a decree by its solicitor, it is equivalent to a finding of fact that the solicitor was authorized to act as he did, and it binds the court on appeal so far as the question is one of fact. It is also an admission that the facts on which the decree rests. [Citations omitted]."
See also: Peters v. Spielvogel, Fla.App. 1964, 163 So.2d 59, 61; New York Cent. Mut. Fire Ins. Co. v. Diaks, Fla. 1954, 69 So.2d 786.
We have carefully examined the relevant portions of the record, that is, the affidavit of counsel for Travelers Indemnity, the transcript of the pretrial conference, the answer and motion to strike filed by Travelers Indemnity, portions of the voir dire examination of the jury, the conference on requested jury instructions, and the motions for new trial filed by Travelers Indemnity. We express the view that the counsel for the insurance company stipulated that the judgment would be entered against it if a judgment were entered against Benedict & Jordan. For the reasons stated the judgment for damages is affirmed.
We now consider the asserted error in the award of attorney's fees for services in the lower court. Travelers Indemnity states: "In the event [that] this court reverses in part the final judgment appealed against Travelers, Travelers will be entitled to a reduction in the amount of attorney's fees rendered against it . ."
*235 As we hereby affirm the judgment appealed, we do not reverse the award of counsel fees for service rendered in the circuit court action.
Affirmed.