**In re HALLMARK BUILDERS, INC., Debtor.**

**The BRADFORDT CO., Plaintiff,**

v.

**HALLMARK BUILDERS, INC., Defendant.**

**Bankruptcy No. 96–01096–6B1. Adv. No. 96–241.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 19, 1996.

Carl W. Hartley, Jr., Orlando, FL, for Plaintiff.

Kenneth D. Herron, Orlando, FL, for Defendant.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on The Bradfordt Co.'s Motion for Summary Judgment (Doc. 7). After reviewing the pleadings, evidence, arguments of counsel, and authorities for their respective positions, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Hallmark Builders, Inc., ("Debtor"), filed a voluntary petition in Chapter 11 of the Bankruptcy Code on February 23, 1996. The Bradfordt Co., ("Bradfordt") filed this adversary proceeding on June 24, 1996 (Doc. 1). Bradfordt filed their Motion for Summary Judgment on August 16, 1996. The Debtor filed a Response on September 11, 1996 (Doc. 10).

A contract for sale and purchase of 46 single-family residential lots between Bradfordt and the Debtor, entered into on December 30, 1994, set an original closing date of January 10, 1995. The contract provided that the Buyer, the Debtor, was to deposit $25,000.00 in escrow with Sobering, Gray & White, P.A., escrow agent. The contract also provided that the Debtor was to deposit an additional $21,000.00 with the escrow agent or obtain a letter of credit issued on a local bank in the said amount. The contract referred to the total amount, $46,000.00, as the "Deposit". The contract provided:

> 2.(F) ... [that] [a]s Buyer, [Debtor], commences to purchase the Lots according to the Takedown Schedule provided hereinbelow the Buyer shall receive a reduction in the amount of the Letter of Credit, up to Twenty One Thousand Dollars ($21,000.00), based upon the number of Lots purchased by Buyer at the rate of One Thousand Dollars ($1,000.00) per Lot, at the time of closing of the purchase of each such Lot. The remaining Twenty Five

Thousand Dollars ($25,000.00) of Earnest Money still remain in escrow, and be allocated, released to Seller, [Bradfordt], and credited to Buyer toward Buyer's purchase of the last Lots purchased as of the last Takedown Date under the Takedown Schedule.

17. (a) the rights of adverse claimants shall have been finally settled by binding arbitration or finally adjudicated in a court assuming and having jurisdiction of the property involved herein or affected hereby.... Further Escrow Agent shall have the right at any time after a dispute between the Seller and Buyer has arisen, to pay any deposits held by it into any court of competent jurisdiction for payment to the appropriate party, whereupon Escrow Agent's obligations hereunder shall terminate....

The contract established a closing date of January 11, 1995 which was extended to January 16th. The Debtor failed to perform by failing to close on January 16th nor on January 17th and 20th. The Debtor failed to provide Bradfordt with written notice listing cause not to close which would have given Bradfordt opportunity to cure such cause.

The Debtor and Bradfordt litigated the issue of ownership of the earnest money deposit held by the escrow agent in arbitration. An evidentiary hearing was held before a panel of three arbitrators from American Arbitrators Association on February 19, 1996. The Debtor filed under Chapter 11 four days later. Bradfordt was granted relief from the automatic stay (Doc. 191) on May 2, 1996 for the limited purpose to permit entry of the Arbitrator's decision.

The Arbitrators entered an Interim Award on June 18, 1996 determining that Respondent, Bradfordt, was entitled to be paid from the earnest money deposit held on the subject contract plus simple interest from January 16, 1995 (Doc. 2 Exh. B). The Arbitrators Interim Award states:

4. CLAIMANT failed to perform on the subject contract by failing to close on January 16, 1995 and on the subsequent dates of January 17, 1995 and January 20, 1995 granted by RESPONDENT. Therefore, as of January 20, 1995, RESPONDENT was entitled to retain the earnest money set forth in the contract.

6. CLAIMANT'S suggestion of possible defects in title to the property and CLAIMANT'S suggestions that items in contract Exhibit D may not have been completed are negated by the fact that RESPONDENT closed with Heritage with no problems, by the fact that a Certificate of Completion was awarded by Orange County, and by the fact that CLAIMANT gave RESPONDENT neither oral nor written notice of any such defect as required by Paragraph 11 of the contract.

Respondent, Bradfordt, was awarded $46,000.00 plus total interest amount of $6,682.00.

Bradfordt filed its Motion for Summary Judgment on August 16, 1996, arguing that the Arbitrators' award has res judicata and collateral estoppel effect. The issue is identical to the one involved in the prior litigation, this issue was actually litigated in the prior litigation, and the determination of this issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. The Arbitrators' award has collateral estoppel effect.

The earnest money deposit held in escrow in the amount of $46,000.00 is not property of the estate pursuant to 11 U.S.C. § 541(a)(1), because the Debtor defaulted on the contract.

### CONCLUSIONS OF LAW

The issue before the Court is whether the earnest money deposit held in escrow is property of the estate.

Section 541(a)(1) of the Bankruptcy Code provides with certain exceptions, that all legal and equitable interests of a debtor in property as of commencement of the case become property of the estate. 11 U.S.C. § 541(a)(1). Applicable state property law determines whether a debtor has legal or equitable interest in property as of the bankruptcy petition date. *In re Health Products, Inc.,* 159 B.R. 332, 337 (Bankr.M.D.Fla.1993).

Legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the

escrow agreement. 22 Fla.Jur.2d § 7, at 223 (1980); *See Peters v. Spielvogel,* 163 So.2d 59 (Fla. 3d DCA 1964); *Cradock v. Cooper,* 123 So.2d 256 (Fla. 2d DCA 1960). The condition specified in the Debtor's contract with Bradfordt was never met. The Debtor breached the contract by failing to close on the specified dates in accordance with the agreement with Bradfordt. The deposits held by the Escrow Agent are property of the prevailing party. On the date of Debtor's breach, January 16, the earnest money deposit held in escrow was not property of the Debtor. The earnest money deposit held in escrow is not property of the estate pursuant to 11 U.S.C. § 541(a)(1).

■ The Arbitrators' award reflects these underlying facts. Collateral estoppel is applicable because the issue is identical to the issue in the prior litigation. *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America Inc.,* 32 F.3d 528, 532 (11th Cir.1994). The Arbitrators were faced with the question of who was entitled to the money held in escrow; this issue is identical to the one before the Bankruptcy Court. *Id.* The issue was actually litigated in the prior litigation as the Debtor and Bradfordt litigated this issue in arbitration. *Id.* The determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier arbitration. *Id.*

■ An arbitration decision can have res judicata or collateral estoppel effect when the proceeding affords basic elements of adjudicatory procedure such as opportunity for presentation of evidence. *Greenblatt v. Drexel Burnham Lambert Incorp.,* 763 F.2d 1352, 1359 (11th Cir.1985). The determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as a determination of a court would be treated. *Id., Restatement Second of Judgments* § 84(3) and comment c (1982), *see also City of Gainesville, Florida v. Island Creek Coal Sales Co.,* 618 F.Supp. 513, 517 (N.D.Fla.1984), *aff'd* 771 F.2d 1495 (11th Cir.1984).

■ Federal courts can adequately and effectively protect the federal interest in the federal proceeding by determining the pre-clusive effect to be given to an arbitration proceeding. *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The nature of the claim asserted before arbitration and the procedural adequacy of the arbitration proceeding persuades the Court that the factual findings necessary to support the arbitration award should be given collateral estoppel effect in the present proceeding. Arbitration was properly commenced under the terms of the arbitration clause in the contract, this results in an outcome determinative as to all contractual rights and liabilities. *Overseas Motors, Inc. v. Import Motors Ltd.,* 375 F.Supp. 499, 511 (E.D.Mich.1974), *aff'd,* 519 F.2d 119, 123 (6th Cir.1974), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975).

The Debtor and Bradfordt's contract provided for arbitration, the Debtor agreed to arbitration, the parties had full and fair opportunity to litigate this issue, and the arbitration procedure adequately protected the rights of the parties. The Court will give collateral estoppel effect to the Arbitrators' factual findings. The Debtor had no legal nor equitable interest in the money held in escrow as of the bankruptcy petition date. The earnest money deposit held in escrow is not property of the estate pursuant to 11 U.S.C. § 541(a)(1). Bradfordt's relief under the Motion for Summary Judgment is due to be granted.